IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WEIRTON STEEL CORPORATION
LIQUIDATING TRUST,
successor-in-interest to
Weirton Steel Corporation,

      Plaintiff,

v.                             Civil Action No. 5:07CV122
                                         (STAMP)

ZURICH SPECIALTIES LONDON, LTD.,

      Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS COUNT II**

I.  Background

Weirton Steel Corporation Liquidating Trust ("WSCLT"), the successor-in-interest to the bankruptcy estate of Weirton Steel Corporation ("Weirton Steel"), filed suit against Zurich Specialties London, Ltd. ("Zurich") for payment of insurance monies allegedly due to WSCLT under a policy held by Weirton Steel. Prior to the liquidation of Weirton Steel, Weirton Steel filed a claim under an insurance policy issued by Zurich for losses allegedly sustained because of a fire at Pinnacle Mine. Zurich rejected the claim and, thereafter, WSCLT filed the instant suit for breach of contract. In its two-count complaint, WSCLT alleges that coverage for Weirton Steel's claimed loss is available under two separate clauses of the insurance policy. Zurich filed a motion to dismiss Count II of the complaint in which it contends that WSCLT's second theory of coverage fails to state a claim upon which relief can be

granted.  WSCLT filed a response in opposition to the motion and Zurich replied.

## II.  Facts

Weirton Steel was a steel manufacturing company located in Weirton, West Virginia.  As a steel manufacturer, Weirton Steel required a steady supply of coke, a fuel source derived from coal, to power its steel-making processes.  Pursuant to a Coke Sales Agreement, Weirton Steel received the majority of its coke supply, during the time period relevant to this case, from U.S. Steel Corporation ("U.S. Steel").  On December 9, 2003, as a result of a fire caused by a series of mine explosions at Pinnacle Mine, U.S. Steel's primary source of coking coal, U.S. Steel declared a force majeure pursuant to its Coke Sales Agreement with Weirton Steel. U.S. Steel did not resume normal coke shipments until May 2004.

In its complaint, WSCLT alleges that Weirton Steel sustained $39,075,767.00 in damages when its coke supply from U.S. Steel was interrupted because of the force majeure event.  From May 1, 2003 to May 1, 2004, Weirton Steel was insured under a policy issued by Zurich ("the Policy"), which generally provided coverage for damages sustained by Weirton Steel as a result of permanent or temporary losses of property or services.  WSCLT asserts that the damages Weirton Steel sustained from the loss of coke supply are covered under two separate clauses of the Policy: (1) the "Service Interruption Time Element" clause and (2) the "Time Element" and

2

"Contingent Time Element" clauses.  Zurich contends that the loss is not covered under the Policy and moves to dismiss Count II, WSCLT's "Time Element" and "Contingent Time Element" claim,[1] pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III.  Applicable Law

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990).  Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'"  Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990).  The Rule 12(b)(6) motion

---

[1]Zurich further argues that, although not ripe for dismissal on the pleadings, Count I of the complaint will prove untenable after a period of discovery.

also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  Id. § 1356, at 298.  For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  Id. § 1357 at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. Rogers, 883 F.2d at 325.  A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and that no set of facts would support the plaintiff's claim. 5A  Wright & Miller, supra § 1357, at 344-45; Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### IV.  Discussion

In Count II, WSCLT asserts that the Policy provides coverage for Weirton Steel's loss of coke supply pursuant to the "Time Element" and the "Contingent Time Element" clauses in Section C of the Policy.  The Time Element clause provides, in pertinent part:

> A.   This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured by this Policy:

4

1) to property described elsewhere in this
   Policy and not otherwise excluded by this
   Policy or otherwise limited in the TIME
   ELEMENT COVERAGES below;

2) used by the Insured, or for which the
   Insured has contracted use;

3) located at an Insured Location; or

4) while in transit, as provided by this
   Policy, and

5) during the Periods of Liability described
   in this section.

Additionally, the Contingent Time Element clause provides:

This Policy covers the Actual Loss Sustained and EXTRA
EXPENSE incurred by the Insured during the PERIOD OF
LIABILITY:

1) directly resulting from physical loss or
   damage of the type insured; and

2) to property of the type insured,

at any locations of direct suppliers or customers located
within the TERRITORY of this Policy.

WSCLT contends that the loss of coke supply that Weirton Steel
suffered as a result of the fire at U.S. Steel's Pinnacle Mine is
a covered loss because the Policy extends coverage to property "for
which the Insured has contracted use" and to property "at any
locations of direct suppliers."   Zurich does not dispute that
Weirton Steel contracted with U.S. Steel for the use of coke and
that Weirton Steel lost the use of such coke when a series of
explosions occurred at Pinnacle Mine.  Rather, Zurich asserts that
the loss is not covered under the Time Element and Contingent Time

5

Element clauses because the Policy specifically excludes "underground mines or mine shafts or any property within such mine or shaft" from the type of property insured.  This Court agrees.

It is well established that a court, in deciding disputes about the meaning of a contract, must "endeavor to carry into effect the intent of the parties to the agreement, seeking first to ascertain such intent from the instrument itself."  Bennett v. Dove, 277 S.E.2d 617, 618-19 (W. Va. 1981). "In ascertaining the intent from the instrument, the language of the agreement must be afforded its 'plain and ordinary meaning' without resort to judicial construction."  Fox Grocery Co. v. University Foods, Inc., 382 S.E.2d 43, 45 (W. Va. 1989) (citing Williams v. South Penn Oil Co., 43 S.E. 214 (W. Va. 1902)).  Insurance policy provisions that are clear and unambiguous are not subject to judicial construction or interpretation; rather, courts must give full effect to the plain meaning intended.  Kelly v. Painter, 504 S.E.2d 171 (W. Va. 1987).

The Policy at issue is divided into five sections: Declarations – Section A; Property Damage – Section B; Time Element – Section C; Loss Adjustment and Settlement – Section D; and General Provisions – Section E.  Section B sets forth the property covered by the Policy and the property not covered by the Policy. Section B provides, in relevant part that "This Policy excludes: . . . underground mines or mine shafts or any property within such

mine or shaft." (emphasis added).  WSCLT argues that the exclusions identified in Section B do not apply to the entire Policy.  WSCLT emphasizes that the Contingent Time Element clause, unlike the Time Element clause, does not state that coverage under the clause is afforded to property "not otherwise excluded by this Policy." WSCLT contends that because this limiting language was included in the Time Element clause and not in the Contingent Time Element clause, that the property exclusions identified in Section B do not apply to the Contingent Time Element clause.  This argument is contrary to the plain meaning of the exclusions clause of Section B of the Policy.

The ordinary and plain meaning of the words "this Policy excludes" is that the entire Policy, rather than just a portion of the Policy, excludes certain property from coverage.  WSCLT's interpretation requires the word "Policy" to be read in a way that is inconsistent with this plain meaning.

Additionally, the absence of the phrase "not otherwise excluded by this Policy" from the Contingent Time Element clause cannot reasonably be read to establish coverage for property explicitly excluded in Section B.  Indeed, the Contingent Time Element clause includes its own limiting phrase that forecloses the argument made by WSCLT in Count II.  The Contingent Time Element clause grants coverage for loss "to property of the type insured." This phrase can only have meaning in reference to another section

of the Policy.  Section B of the Policy identifies types of property insured.  Thus, the phrase "of the type insured" implicitly refers back to Section B, which specifically excludes underground mines from coverage.

Reading the insurance policy as a whole, and attributing the words within the Policy their plain and ordinary meaning, this Court concludes that WSCLT is not entitled to recover under the Time Element or Contingent Time Element clauses of the Policy because underground mines, such as Pinnacle Mine, are specifically excluded from coverage.  Accordingly, Count II of the complaint must be dismissed for failure to state a claim upon which relief can be granted.[2]

## V. Conclusion

For the above-stated reasons, Zurich Specialties London, Ltd.'s motion to dismiss Count II is GRANTED.

IT IS SO ORDERED.

---

[2]WSCLT's allegation in Count II that damage to Pinnacle Mine prevented "access" to property for which Weirton Steel had contracted does not change this result.  Although the Policy provides coverage for "prevention of ingress to or egress from an Insured Location," such coverage is provided only where prevention of access occurs as "a direct result of physical damage of the type insured by this Policy, to the kind of property not excluded by this Policy." (emphasis added).  Because this Court has concluded that Pinnacle Mine and any property within Pinnacle Mine is excluded from the Policy's property damage coverage, WSCLT is also not entitled to recover under the "Ingress/Egress" clause of the Policy.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     July 28, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE